IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JEREMY DUNCAN,<br><br>　　　　　　　Petitioner,<br><br>vs.<br><br>EARL L. HOUSER, Superintendent III,<br>Goose Creek Correctional Center,<br><br>　　　　　　　Respondent. | No. 3:20-cv-00021-JKS<br><br>MEMORANDUM DECISION |

Jeremy Evan Duncan, a state prisoner now represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Duncan is in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at Goose Creek Correctional Center. Respondent has answered, and Duncan has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On July 24, 2007, a felony complaint was charged against Duncan after an investigation into reported claims of possible sexual abuse to a minor child that was in Duncan's care days beforehand. On direct appeal of his conviction, the Alaska Court of Appeal laid out the following facts underlying the charges against Duncan:

> Jeremy Duncan was convicted of sexual abuse of a twenty-month-old girl named B.T. On the night of the offense, B.T.'s mother and Duncan's girlfriend went out for the evening, and Duncan was babysitting for B.T. The next day, when B.T.'s mother changed B.T.'s diaper, she noticed spots of blood and B.T. cried when her mother tried to wipe her. B.T.'s mother took B.T. to the emergency room, and the medical professionals

-1-

> found vaginal injuries. Duncan initially denied that he caused any injury to B.T. But he eventually admitted to the police that he stuck his pinky finger into her vagina and that she started to bleed when he pulled his finger out. He also prepared a written statement at the police station containing the same admission.

*Duncan v. State*, No. A-10481, 2011 WL 2084085, at *1 (Alaska Ct. App. May 25, 2011).

On October 27, 2008, Duncan proceeded to a jury trial. At trial, Duncan testified that, when he first changed B.T.'s diaper that night, she did not have any physical problems and he did not see any blood. He further testing that the last time he changed her diaper that evening he saw "droplets of blood and urine" in her diaper. He denied that he put his pinky finger into her vagina. He testified that he felt psychologically intimidated when he told police otherwise. At the conclusion of trial, the jury found Duncan guilty of first-degree sexual abuse of a minor. The trial subsequently sentenced Duncan to a term of 35 years' imprisonment.

Through counsel, Duncan appealed his conviction, arguing that the trial court erred in failing to *sua sponte* instruct the jury that "sexual penetration does not include acts performed for the purpose of administering a lawful form of treatment that is reasonably adapted to promoting the physical health of the person being treated." By reasoned, unpublished decision, the Court of Appeal unanimously affirmed the judgment against Duncan after concluding that there was no evidence in the record related to a medical treatment defense and thus the trial court did not plainly err in not giving the instruction. *Duncan*, 2011 WL 2084085, at *1-2. The Alaska Supreme Court denied his petition for hearing without comment on June 30, 2011.

On February 6, 2013, Duncan filed in the Alaska Superior Court a petition for post-conviction review. After his request for the appointment of counsel was granted, Duncan filed an amended application for post-conviction relief alleging that his trial attorney was ineffective for failing to file a motion to suppress Duncan's confession based on Duncan's ignored request for an attorney prior to questioning. An evidentiary hearing was held in the Superior Court, where Duncan appeared by telephone and was represented by counsel. At the evidentiary hearing, trial counsel testified that he was unaware of Duncan's request for an attorney and that, had he noticed it before trial, he would have tried to obtain an expert to enhance the recording of

the interview with law enforcement to see if Duncan's request could be more clearly made out. Trial counsel also testified, however, that, prior to the evidentiary hearing, he had listened to the record with headphones and had colleagues listen and none could clearly understand what Duncan had said. Duncan testified that he clearly requested an attorney while Officer King was transporting him to the police station. Officer King testified that he did not hear any statement about an attorney during that drive.

Following the evidentiary hearing, the Superior Court denied Duncan's post-conviction relief application. The court noted that it had independently listened to the recording and was unable to discern that Duncan requested an attorney. The court also concluded that Duncan was not in custody during his transport to the police station, and thus *Miranda*[1] warnings were not constitutionally required, and in any event Duncan did not make any incriminating statements at that time. Because Duncan's incriminating statements came only he had been given *Miranda* warnings and voluntarily waived his right to remain silent, and in light of the circumstances surrounding Duncan's statement, the Superior Court concluded that any suppression motion on the basis of a *Miranda* violation would have been denied.

Duncan appealed the denial to the Alaska Court of Appeal. The appellate court unanimously affirmed the dismissal in an summary disposition issued on May 15, 2019. After listening to the audio recording, the court agreed with the superior court that it could not discern what Duncan said, and therefore Duncan failed to establish that his proposed suppression motion would have been successive. The Alaska Supreme Court summarily denied Duncan's petition for hearing on August 7, 2019.

Duncan then filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated January 20, 2020. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1),(2). Respondent answered the *pro se* petition, arguing that it should be dismissed in its entirety as untimely. Docket No. 5. The Federal Public Defender's Office moved, as friend of the Court, to be appointed as Duncan's

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (a suspect has a constitutional right not to speak to police after he is arrested and given his *Miranda* warnings).

counsel for the purpose of investigating whether the Petition might be deemed timely based on the date in which Duncan discovered the factual basis or his claim. Docket No. 8. The Court granted the request and ordered appointed counsel to file a reply brief in support of the Petition, which addresses the Petition's timeliness and merits. Docket No. 9. Briefing is now complete, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his Petition before this Court, Duncan argues, as he did in his application for post-conviction relief in the state courts, that trial counsel was ineffective for failing to move to suppress his confession on the basis of a *Miranda* violation.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Respondent urges the Court to dismiss Duncan's Petition as untimely. The AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Duncan was convicted in the Alaska Superior Court in the underlying criminal case number 3VA-07-00146CR on October 31, 2008. The Alaska Court of Appeals affirmed the conviction and sentence on May 25, 2011, *Duncan*, 2011 WL 2084085, at *2, and the Alaska Supreme Court denied his petition for hearing on June 30, 2011. His conviction became final on direct review 90 days later, when his time to file a petition for certiorari in the U.S. Supreme Court expired on September 28, 2011. *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).

On May 31, 2012, Duncan filed in the Alaska Superior Court a petition for post-conviction review. At that time, 246 days had elapsed since his conviction had become final on September 28, 2011. The AEDPA limitations period was tolled during the pendency of Duncan's post-conviction relief proceedings in the Alaska state courts. When the Alaska Supreme Court denied Duncan's petition for hearing of the dismissal of his post-conviction relief action on August 7, 2019, the AEDPA limitations period began to run again. When the

limitations period recommenced, 119 days remained in the one-year period. Duncan thus had until December 4, 2019, to timely file his Petition. Duncan did not file the instant Petition until January 20, 2020.² Accordingly, the Petition is facially untimely by 47 days.

After Respondent moved to dismiss the Petition as barred by the AEDPA statute of limitations, the Federal Public Defender's Office filed a Friend of Court brief asking the Court to appoint it as Duncan's counsel for the purposes of investigating whether the Petition could nonetheless be construed as timely. Docket No. 8. In its submission, the Federal Public Defender did not dispute the facial untimeliness of the Petition, but rather indicated that it would investigate when Duncan discovered the factual predicate of his claim to determine whether the Petition was timely under 28 U.S.C. § 2244(d)(1)(D). *Id.* The Court granted the request, and appointed the Federal Public Defender as counsel. Docket No. 9.

Through counsel, Duncan argues that his Petition is timely because he could not have determined the substance of the audio recording of his interview prior to the filing of the post-conviction relief application. Docket No.25 at 1-4. According to Duncan, his Petition is timely pursuant to 28 U.S.C. § 2244(d)(1)(D) because he did not, and could not, have discovered the factual predicate for his claim until at least July 14, 2015, when Duncan's post-conviction relief entered his appearance. *Id.* at 4. Duncan avers that it was not until after Duncan's post-conviction relief counsel entered the case that counsel became aware of the audio recording and Duncan's apparent request for counsel. *Id.* Because the statute of limitations was tolled while his post-conviction relief application was pending from July 14, 2015, to August 7, 2019, under 28 U.S.C. § 2244(d)(2), Duncan avers that only 166 days in the one-year statute of limitations period have elapsed.

---

² Respondent's motion states that Duncan filed his federal habeas petition on January 28, 2020, which is the date it was received in the courthouse and docketed. This Court, however, is obligated to give Duncan the benefit of the "mailbox rule" and assume that he "filed" his petition on the date he signed it and presumably turned it over to prison authorities. *See Anthony v. Cambra*, 236 F.3d 568, 574-75 (9th Cir. 2000) (citing *Houston v. Lack*, 487 U.S. 266, 275 (1988)). The Petition at Docket No. 1 indicates that Duncan delivered it to the prison mailing system on January 20, 2020. Docket No. 1 at 15.

-7-

But Duncan fails to show that he was precluded from discovering the factual predicate of his ineffective assistance claim at any time since he made the alleged attorney request in 2007. Duncan instead focuses on when his attorney became aware of Duncan's request, which is presumably when Duncan learned the legal significance of such request. But § 2244(d)(1)(D) is clear that it is the discovery, actual or imputed, of the claim's "factual predicate," *not* the recognition of the facts' legal significance. In other words, the time under § 2244(d)(1)(D) begins when the prisoner knows, or through due diligence could discover, the salient facts, not when he recognizes the legal significance of those facts. *See Hazan v. Galaza*, 254 F.3d 1150, at 1154 n.3 (9th Cir. 2001) (citation omitted). Because Duncan himself would have made the request, he cannot show that he was prevented from learning the factual predicate of his claim, *i.e.*, his invocation of the request. Accordingly, the Petition is untimely, and must be dismissed with prejudice on that basis.[3]

## V. CONCLUSION AND ORDER

Duncan's Petition is untimely.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED THAT** all pending motions are **DENIED AS MOOT.**

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

---

[3] Respondent also argues that Duncan's claims are unexhausted. Because the Court finds the timeliness issue dispositive in this case, the Court declines to consider other procedural issues.

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 18, 2021.

s/James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
Senior United States District Judge